IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ADAM LUJANO, | |
| **Plaintiff,** | |
| v. | Case No. 25-cv-1351-NJR |
| JEREMIAH BROWN, CHRISTOPHER CALES, NOLAN GERLING, and BRIAN L. TOLIVER, | |
| **Defendants.** | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Adam Lujano, an inmate of the Illinois Department of Corrections who is currently incarcerated at Lawrence Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, Lujano alleges that officers used excessive force against him in violation of the Eighth Amendment.[1]

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which

---

[1] Lujano later filed a document entitled "Exhibits" which includes a letter written to several officials, including the warden, governor, IDOC director, state police, and state attorney general (Doc. 10). But the Court does not accept piecemeal amendments to the Complaint. Thus, the letter will not be considered as part of the pleading.

1

relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

On May 10, 2025, around 2:00 a.m., Lieutenant Nolan Gerling and Sergeant Christopher Cales were closing chuckholes in the unit (Doc. 1, p. 2). Lujano alleges that he had his towel in the chuckhole so that he could rest his arm on the space (*Id.*). Lieutenant Gerling confiscated the towel (*Id.*). In response, Lujano requested a crisis team (*Id.*). Lujano notes that five days before the incident, a tactical team performed an operation at Lawrence and confiscated his nephew's obituary card (*Id.*).

The officers refused Lujano's request for a crisis team. They instead pushed his arm back into the cell and maced him in the face and on his clothes (*Id.*). They then closed the chuckhole, leaving Lujano covered in mace and unable to breathe (*Id.*). The officers returned some time later, cuffed Lujano, transported him to a nurse, and then to the showers (*Id.*). They cuffed Lujano to the shower doors and left, leaving Lujano chained by both his hands and feet, unable to move (*Id.*). At some point, Cales also confiscated Lujano's glasses (*Id.* at p. 3).

Lujano does not state the exact time he was locked in the showers but notes that it was long enough that he had to use the restroom (Doc. 1, p. 3). Inmates in the area began banging on their doors to obtain help for Lujano, but no one ever came to release Lujano from the door. He was forced to defecate on himself. Lujano alleges that officers came into the shower room before the start of second shift, although it is unclear whether

2

Gerling and Cales were present (*Id.*). In any event, Lujano alleges the offers saw the feces and left him chained until approximately 5:00 p.m. (*Id.*).

Lujano alleges that the incident is the subject of an internal affairs investigation and photographs were taken of his injuries (Doc. 1, p. 3). Lujano alleges that an assault charge against an officer was later expunged from his record because the video revealed that the officers assaulted him (*Id.*). He asked Warden Brown to press charges against the officers; he also wrote the state police, the local chief of police, and other state and local officials (*Id.*). In addition to alleging use of excessive force by the officers, Lujano alleges that Gerling retaliated against him by threatening physical violence against Lujano for filing grievances (*Id.* at p. 4).

Lujano further alleges that he wrote letters to the warden and IDOC director, and has since learned that the warden ordered the chuckholes closed by any means (Doc. 1, p. 5). He alleges that the adjustment committee initially found him guilty and chairperson Brian Toliver did not properly investigate the ticket, a violation of administrative directives (*Id.*). Lujano acknowledges that he made a written statement that was provided to the adjustment committee (*Id.*).

## Preliminary Dismissals

To the extent that Lujano alleges that Gerling retaliated against him, he fails to state a claim. In order to state a retaliation claim, a plaintiff must allege that he engaged in protected activity, "suffered a deprivation likely to deter such activity," and the "First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014). Lujano alleges that

3

Gerling is retaliating against him by threatening him with physical violence if he pursues his claims through the grievance process, but he fails to provide pertinent facts about this alleged retaliation. Lujano fails to allege when these threats took place, the nature of those threats, and whether he was ultimately able to pursue those grievances. In fact, it appears that Lujano did pursue a grievance about the issue and internal affairs has an open investigation (Doc. 1, p. 35). Lujano simply fails to provide enough facts to state a viable retaliation claim.

Lujano also fails to state any due process claim against Brian Toliver. "To succeed on a due process claim stemming from a prison disciplinary proceeding, an inmate must demonstrate (1) a constitutionally protected liberty interest and (2) deficient procedures attendant to the deprivation of that interest." *Ealy v. Watson*, 109 F.4th 958, 964 (7th Cir. 2024) (internal citations omitted). An inmate's liberty interests are protected by the Due Process Clause only insofar as a deprivation of the interest at issue would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). When looking at placement in segregation, both "the duration of the segregative confinement and the conditions endured" must be considered. *Jackson v. Anastasio*, -- F.4th --, 2025 WL 2437947, at * 6 (7th Cir. Aug. 25, 2025). A short stay in segregation, by itself, does not typically amount to an atypical and significant hardship. *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Thomas v. Ramos*, 130 F.3d 754, 761-62 (7th Cir. 1997) (two months not enough on its own); *Williams v. Brown*, 849 F. App'x 154, 157 (7th Cir. 2021) (noting that 30 days is not enough). An attached adjustment committee final summary report notes that Lujano was charged with

assault with injury, damage of misuse of property, and disobeying a direct order. He only received seven days in segregation, and Lujano acknowledges that the ticket was later expunged. There is no indication that his stay in segregation constituted an atypical and significant hardship. The only other discipline was a loss of commissary which also does not implicate a liberty interest. Thus, his due process claim is **DISMISSED without prejudice**.

Finally, to the extent that Lujano alleges that Jeremiah Brown violated his rights, he fails to state a claim. Although Lujano alleges that as warden, Brown was legally responsible for the operations at the prison, he cannot be liable simply in his position as warden because the doctrine of *respondeat superior* (or supervisory liability) does not apply to actions filed under Section 1983. *See Kinslow v. Pullara,* 538 F.3d 687, 692 (7th Cir. 2008). Nor are there any allegations to suggest that Brown was personally involved in the use of force. Lujano alleges that Brown ordered the chuckholes be closed, but there are no allegations to suggest that he ordered the use of force.

## Discussion

Based on the allegations in the Complaint, the Court designates the following count:

> **Count 1:** Eighth Amendment excessive force claim against Nolan Gerling and Christopher Cales for assaulting Lujano on May 10, 2025.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered**

**dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

At this stage, Lujano states a viable excessive force claim against Nolan Gerling and Christopher Cales for their actions on May 10. Thus, Count 1 shall proceed against Gerling and Cales.

## Motion for Counsel

In addition to his Complaint, Lujano filed a motion for counsel, noting that he has some high school education and speaks English (Doc. 6). He fails to indicate, however, whether he sought counsel on his own prior to filing his motion. In determining whether to recruit counsel, the Court is directed to make a two-fold inquiry: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (citing *Farmer v. Haas*, 990 F.2d 319, 321-22 (7th Cir. 1993)). The first prong of the analysis is a threshold question. If a plaintiff has made no attempt to obtain counsel on his own, the court should deny the request. *See Pruitt*, 503 F.3d at 655. Lujano fails to indicate whether he has sought counsel in this case. Thus, his motion is **DENIED**. Should Lujano seek the appointment of counsel in the future, the Court **DIRECTS** him to (1) contact at least **three** attorneys regarding representation *in this case* prior to filing another motion, (2) include in the motion the

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

name and addresses of at least three attorneys he has contacted, and (3) if available, attach the letters from the attorneys who declined representation. If he is unable to contact an attorney, he should include a statement explaining why he cannot meet this threshold requirement.

## Disposition

For the reasons stated above, Count 1 shall proceed against Nolan Gerling and Christopher Cales. All other claims and defendants are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Nolan Gerling and Christopher Cales: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Lujano. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Lujano, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Lujano, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Lujano is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

DATED: October 20, 2025

*[signature: Nancy J. Rosenstengel]*

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**